1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

MARIO ATKINS,

Plaintiff,

CASE NO. C06-0883-JCC

11

v.

12

ORDER

13

TODD PACIFIC SHIPYARDS, INC.,

Defendant.

14
15

16        This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No.

17   41), Plaintiff's Response in opposition (Dkt. No. 45), and Defendant's Request to Strike Plaintiff's

18   Response and Reply (Dkt. No. 47). Defendant's Request to Strike Plaintiff's Response stems from the

19   fact that Plaintiff's Response was due the Monday before the noting date, on March 24, 2008. Local

20   Rules W.D. Wash. CR 7(d)(3). Plaintiff filed his Response on March 27, 2008, three days late. However,

21   because Plaintiff is proceeding *pro se*, and the Ninth Circuit generally affords *pro se* litigants some

22   leniency in their compliance with the technical rules of civil procedure, *see Draper v. Coombs*, 792 F.2d

23   915, 924 (9th Cir. 1986), the Court will consider Plaintiff's untimely papers. Defendant also requests that

24   the Court strike certain portions of the Response and the declaration and exhibits offered in opposition to

25

26   ORDER – 1

the motion, on grounds that they contain inadmissible hearsay and are not properly authenticated. (Reply 1–2 (Dkt. No. 47).) However, again because Plaintiff is proceeding *pro se*, the Court will not strike Plaintiff's papers. The Court has carefully considered all of the papers submitted in support of and against the motion, including their declarations and exhibits, and has determined that oral argument is not necessary. The Court hereby DENIES IN PART and GRANTS IN PART Defendant's Motion for Summary Judgment and rules as follows.

## I.    BACKGROUND

*Pro se* Plaintiff Mario Atkins is an African-American former employee of Todd Pacific Shipyards Corporation ("Todd") (erroneously identified on the Court's docket as Todd Pacific Shipyards, Inc.). (Def.'s Mot. 1–2 (Dkt. No. 41).) On November 18, 2005, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and the Washington State Human Rights Commission, alleging that he was discriminated against on the basis of his race and color, and retaliated against for complaining to his employer's human resources department, in violation of Title VII of the Civil Rights Act of 1964. (Dkt. No. 1-2.) Specifically, he alleged that during his employment at Todd, he was:

> subjected to racial harassment, including physical assaults. I was referred to as 'boy' and 'black dog'. In May, 2005, when I was getting water from a fountain in the rigging department, another employee told me, 'This water is for White boys only. You Black guys got to pay." A former employee who was not supposed to be in the yard because he had been fired, walked past me in May, 2005 and called me "boy". On or about August 15, 2005, I was forced to take a constructive discharge due to the ongoing racial harassment, and the Company's failure to take sufficient action to stop it.
>
> I reported the racial harassment to human resources many times, beginning in 2002. An incident occurred on June 15, 2005 in which I was struck in the back by an object. I reported it to human resources but nothing was done until they learned I had filed a police report. To my knowledge, no discipline was taken against the person who threw the object. I further believe that most of the harassment I have been subjected to was retaliation for my complaints about racial harassment to human resources.

(Dkt. No. 1-2 at 3.) On March 23, 2006, the EEOC issued a Dismissal and Notice of Rights to Plaintiff, notifying him that the EEOC was unable to conclude that the information obtained in its investigation of

ORDER – 2

1   Plaintiff's employment discrimination complaints established a violation of Title VII of the Civil Rights

2   Act. (Dkt. No. 1-3.) On June 22, 2006, Plaintiff filed a Complaint in this Court, as an attachment to an

3   application for leave to file the action *in forma pauperis*. In his Complaint, Plaintiff stated that the basis

4   of his claim was "the same complaint made to the EEOC. Hostile work environment. Had to take

5   constructive discharge." (Compl. (Dkt. No. 1-2 at 2).) He also attached the EEOC Charge of

6   Discrimination, quoted above. On June 12, 2007, United States Magistrate Judge James P. Donohue

7   denied Plaintiff's request for court-appointed counsel. (Dkt. No. 14.) Plaintiff requested court-appointed

8   counsel a second time, on August 31, 2007, and again, Magistrate Judge Donohue denied the motion.

9   (Dkt. No. 27.)

10      Plaintiff filed an Amended Complaint on September 18, 2007, using a standard form "Civil Rights

11   Complaint Under 42 U.S.C. § 1983." (Dkt. No. 29.) Defendant filed an Answer to the Amended

12   Complaint on October 9, 2007. (Dkt. No. 32.) In the instant motion, Defendant asks the Court to dismiss

13   Plaintiff's suit at the summary judgment stage, on grounds that: (1) Plaintiff's claims are time-barred; (2)

14   Plaintiff has erroneously identified the Defendant; and (3) Plaintiff has failed to state a claim for which

15   relief can be granted. (Def.'s Mot. 1 (Dkt. No. 41).)

16   **II.    APPLICABLE STANDARD**

17      Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file,

18   and any affidavits show that there is no genuine issue as to any material fact and that the movant is

19   entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "A 'material' fact is one that is relevant

20   to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec.*

21   *Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears

22   the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

23   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the moving party meets this initial burden, then the

24   party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W.*

25   *Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there

26   ORDER – 3

1  is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a

2  summary judgment motion, . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth

3  by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion

4  will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P.

5  56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the

6  moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

7  (1986).

8  **III.    ANALYSIS**

9      **A.    Plaintiff Has Not Abandoned His Title VII Claim**

10        In his initial Complaint, Plaintiff stated that his claims in this Court were the same as those alleged

11  in his EEOC Charge, which were grounded in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

12  2000e *et seq*. (Dkt. No. 3.) Plaintiff filed an Amended Complaint on September 18, 2007, using a

13  standard form "Civil Rights Complaint Under 42 U.S.C. § 1983," alleging that:

14      I was hired by Todd Shipyard in June 1999. My most recent position was a painter[.]
   Thoughout [sic] my employment I was subject to racial harassment, racial slurs[.] I was

15      called a boy repeatedly, under the new federal court ruling is a racial slur. I was assaulted
   twice [,] one [sic] which cause [sic] a life long injury. I was laid off as a helper, then my

16      job position was eliminated. I was exposed to a hangman noose in supervisor office.[1] I was
   forced to take a constructive discharge Nov. 2005[.] After I felt threatening. Hostile work

17      environment retaliation.

18  (Am. Compl. (Dkt. No. 29 at 3).) Defendant's motion largely rests on its contention that Plaintiff

19  abandoned his Title VII claims and is now alleging § 1983 claims. (*See* Defs.' Mot. 4 (Dkt. No. 41).) To

20  succeed on a claim under 42 U.S.C. § 1983, a plaintiff must prove that he was:

21      deprived of a right secured by the Constitution or laws of the United States, and that the
   alleged deprivation was committed under color of state law. Like the state-action

22

23  ---------------

24      [1]Plaintiff describes this incident as follows: "Kevin Fish [Plaintiff's supervisor] called me in his
   office were [sic] he had a hangman noose on his file cabinet. He said I need to do more to get along with
   leadmen[.] I told him I'm not going to kiss any ones [sic] ass then I was laid off about 2 weeks later."

25  (Pl.'s Answer to Def.'s Interrog. No. 5 (Dkt. No. 42 at 12).)

26  ORDER – 4

requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (internal quotation omitted). In other words, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 50. The Court is not convinced that Plaintiff intended to abandon his Title VII claims, given the fact that nowhere does he allege that Defendant acted under color of law to deprive him of a constitutional right. Further, Defendant is a private employer, (Def.'s Mot. 14 (Dkt. No. 41)), and Plaintiff has not alleged otherwise, and presents no evidence that Defendant may "fairly be said to be a state actor." Moreover, in his Response to Defendant's motion, Plaintiff continues to refer to alleged violations of Title VII. (Dkt. No. 45 at 2.) The Court finds it more likely that Plaintiff mistakenly used the wrong form to file his Amended Complaint. To the extent that Plaintiff did intend to state any § 1983 claims, however, the Court DISMISSES them as unsupported by the evidence.

The remainder of this Order will address Defendant's arguments relating to Plaintiff's Title VII claims.

## B.    The Statute of Limitation

A prerequisite for a Title VII private party action is a timely filed EEOC charge. In Washington, the charge must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e); HAROLD S. LEWIS, JR. & ELIZABETH J. NORMAN, 1 LITIGATING EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS CASES § 6.5 (2005).

Plaintiff filed his EEOC Charge on November 18, 2005. (Dkt. No. 1-2 at 3.) Therefore, Defendant argues, any of Plaintiff's claims that are based on allegedly unlawful actions that occurred before January 22, 2005, are not timely and must be barred. These would include:

(1)    Plaintiff's claim that a co-worker called him "boy" repeatedly in August 2002 (Am. Compl. 3 (Dkt. No. 29); Pl.'s Resp. (Dkt. No. 45 at 3)), and "black dog" (Compl. (Dkt. No. 3)) or "big dog" in 2001 to 2003 (Dkt. No. 46 at 27, 31), and that his supervisor

called him "big dog"[2] (Pl.'s Interrog. No. 1 (Dkt. No. 46 at 49));

(2)     Plaintiff's claim that he was assaulted in September 2003,[3] when he was kicked in the foot twice by a co-worker (Pl.'s Resp. (Dkt. No. 45 at 2)), allegedly resulting in the appearance of a ganglion cyst on his left foot six or seven months later;

(3)     Plaintiff's claim that he was laid off as a helper and his position was eliminated in 2003 (Am. Compl. 3 (Dkt. No. 29); Def.'s Answer to Pl.'s Interrog. No. 4, 5 (Dkt. No. 46 at 50)); and

(4)     Plaintiff's claim that he was exposed to a "hangman noose" in his supervisor's office in 2003 (Am. Compl. 3 (Dkt. No. 29); Pl.'s Answer to Def.'s Interrog. No. 5 (Dkt. No. 42 at 12); Def.'s Mot. 11 (Dkt. No. 41)), as well as a black stuffed gorilla hanging in an old rigging loft (Pl.'s Resp. (Dkt. No. 45 at 3)).

Claims based on the following actions would not, under Defendant's theory, be barred because the actions occurred within the statutory period:

(1)     Plaintiff's claim that a co-worker called him "boy" once in May 2005 (Compl. (Dkt. No. 3));

(2)     Plaintiff's claim that in May 2005 he was told by a co-worker that "This water [from a water fountain] is for White boys only. You Black guys got to pay." (Compl. (Dkt. No. 3));

(3)     Plaintiff's claim arising out of a June 15, 2005 incident in which he was struck on the back by a piece of wood (Compl. (Dkt. No. 3); Am. Compl. 3 (Dkt. No. 29); Pl.'s Resp. (Dkt. No. 45 at 2)); and

(4)     Plaintiff's claim that he was forced to take a constructive discharge in November 2005 after he felt threatened (Am. Compl. 3 (Dkt. No. 29)) and Defendant failed to take sufficient action to stop the racial harassment (Compl. (Dkt. No. 3)).

To the extent that Plaintiff seeks to recover for discrete retaliatory or discriminatory acts that occurred before January 22, 2005, such claims are barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (holding in part that a party must file a charge within 300 days of the date of

---

[2]It is unclear when Plaintiff alleges this incident to have happened, but Plaintiff includes it in the same exhibit in which he alleges other incidents of being called "big dog" during 2001–2003. (Dkt. No. 46 at 27–29.)

[3]A Seattle Police Report of May 28, 2003, submitted to the Court by Plaintiff, notes that Plaintiff reported the foot-kicking incident to Police as taking place on October 2, 2002. (Dkt. No. 46 at 3.)

ORDER – 6

1  the discrete retaliatory or discriminatory act or lose the ability to recover for it). However, to the extent

2  that Plaintiff relies upon these incidents to prove a hostile workplace claim, the Court may consider all the

3  acts, even ones that fall outside the statutory period, so long as all acts which constitute the claim are part

4  of the same unlawful employment practice and at least one act contributing to the claim occurs within the

5  statutory period. *Id*. at 122. The Court finds that Plaintiff's claim that he was laid off as a helper on the

6  basis of race is a discrete act that Plaintiff may not recover for now because the act occurred outside the

7  statutory period. *See id*. at 114 (describing termination or refusal to hire as easily identifiable "discrete

8  acts"). However, because the Court construes Plaintiff's hostile work environment claim as alleging that

9  Defendant engaged in an unlawful employment practice by failing to respond to or correct the

10  constellation of acts above, and because some of those acts allegedly occurred within the statutory

11  period, the Court will not dismiss the majority of Plaintiff's claims merely because they fall outside the

12  statutory period.

13  **C.      The Longshore and Harbor Worker's Compensation Act**

14          Defendant next argues that Plaintiff's claim with respect to the alleged assault involving Plaintiff's

15  being struck in the back with a piece of wood by another employee in June 2005 is barred by the

16  Longshore and Harbor Worker's Compensation Act (the "LHWCA"), 33 U.S.C. § 901 *et seq*. (Def.'s

17  Mot. 12 (Dkt. No. 41).) Plaintiff describes the pertinent incident as follows: "An incident occurred on

18  June 15, 2005 in which I was struck in the back by an object. I reported it to human resources but

19  nothing was done until they learned I had filed a police report. To my knowledge, no discipline was taken

20  against the person who threw the object." (Compl. (Dkt. No. 3 at 3).) The Seattle Police Report that

21  Plaintiff submitted in support of this claim states that:

22          Victim stated that he wrenched his back—no medical exam. . . . [He reported] that he was
          assaulted at his workplace. [He] stated that he was bent over performing work duties 06-
23          15-05 1330–1400 hrs when he was struck in the back by an unknown object causing [him]
          to twist an [sic] wrench his back. [He] stated he did not see the object that was thrown at
24          him but he heard yelling before he was struck by the object. [He] stated that the object
          that struck him was thrown by an electrician working from a scissor lift at Todd Shipyard.
25          [He] stated that his employer knows who struck [him] with the unknown object.

26  ORDER – 7

(Police Report June 15, 2005 (Dkt. No. 46 at 5).) Plaintiff also submitted a December 12, 2005 letter

from Nathan Ford, Manager of Labor Relations at Todd, to the EEOC in response to Plaintiff's Charge,

describing the incident as follows:

> On June 16, 2005 Mr. Atkins and Jimmie Wells were involved in an altercation of a physical nature. As is Todd Pacific Shipyards Corporation practice both individuals were suspended pending investigation. It was quickly determined that Mr. Atkins was not at fault, he was returned the next day and was paid for the time he missed. Mr. Wells received a 3 day suspension without pay. Therefore Mr. Atkins claim that no discipline was taken is incorrect.

(Dkt. No. 46 at 21.)

The LHWCA "is a workmen's compensation statute that provides specified benefits to covered

maritime workers who are injured in employment related accidents[.]" FORCE, ROBERT & NORRIS,

MARTIN J., 1 THE LAW OF MARITIME PERSONAL INJURIES § 2:1 (5th ed. 2004). Under the LHWCA,

"employees are assured of hospital and medical care and subsistence during the convalescence period. . . .

Employees, on the other hand, ordinarily give up the right of suit for a variety of damages for personal

injuries against employers in return for the certainty of compensation payments as recompense for those

injuries." *Id.* (citing *Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 282 n.24 (1980)).

Plaintiff is not bringing a tort claim for personal injuries based on this incident, and submits no

evidence of medical costs or other economic damage stemming from it. Rather, Plaintiff is alleging hostile

work environment and retaliation claims under Title VII, and cites this incident as evidence that

Defendant knew of the alleged racial harassment and failed to take adequate remedial measures to correct

it. Accordingly, the Court is not persuaded by Defendant's argument that Plaintiff's Title VII claims are

barred in any way by the LHWCA.

**D.    Defendant's Identity**

Defendant points out that in his original and amended Complaints, Plaintiff has misidentified the

defendant as "Todd Pacific Shipyards, Inc.," "Todd Shipyard Inc.," and "Todd Pacific Shipyards." (Def.'s

Mot. 13 (Dkt. No. 41).) The Court will permit amendment of the Amended Complaint to correctly

ORDER – 8

1    identify Defendant as "Todd Pacific Shipyards Corporation."

2        **E.    Plaintiff's Claim for Relief Under Title VII**

3        Based on its position that Plaintiff abandoned his Title VII claims, Defendant's only substantive

4    arguments challenging Plaintiff's Title VII claims are contained in a footnote, in which Defendant argues

5    that Plaintiff fails to state a claim. (Def.'s Mot. 19 n.3 (Dkt. No. 41 at 19).) More specifically, Defendant

6    argues that Plaintiff cannot hold Defendant liable for harassment under either a theory of vicarious

7    liability for the acts of a supervisor or negligence in responding to harassment by a co-worker. (Def.'s

8    Mot. 19 n.3 (Dkt. No. 41).) *See Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). As to the

9    latter theory, Defendant argues that Plaintiff cannot prove his employer knew or should have known of

10   the harassment but did not take adequate steps to address it, *see Swinton*, 270 F.3d at 803, because

11   Defendant "investigated and took prompt remedial action every time Plaintiff complained of racially

12   motivated mistreatment by coworkers[.]" (Def.'s Mot. 19 n.3 (Dkt. No. 41).) Defendant cites no support

13   for this conclusory statement. There is, however, some evidence in a supporting declaration that after

14   Plaintiff complained, in 2002, of racial harassment by co-worker Lee Sherman, who allegedly repeatedly

15   called Plaintiff "boy," Defendant's Manager of Labor Relations, Nathan Ford, told Mr. Sherman that his

16   behavior was in violation of company policy and warned Mr. Sherman that any further violations would

17   result in severe discipline. (Ford Decl. ¶ 6 (Dkt. No. 43 at 2).) Whether this remedial action was enough

18   to address the problem remains to be determined; it appears that Mr. Sherman's inappropriate conduct

19   persisted, since his employment was ultimately terminated on February 7, 2006, after Plaintiff left in

20   August 2005, for having made a racial slur. (Def.'s Answer to Pl.'s Interrog. No. 17 (Dkt. No. 46 at 60).)

21   Defendant has put forth no evidence of other remedial action, such as diversity training or the like, in

22   response to this repeated conduct by Mr. Sherman. Additionally, Defendant's argument with respect to

23   Plaintiff's allegation that Mr. Sherman called him "boy" in May 2005 relies upon a disputed issue of fact:

24   Defendant claims that because Mr. Sherman was working at a different facility than Plaintiff by May

25   2005, the incident could not have happened when Plaintiff claims it did. (Ford Decl. ¶ 6 (Dkt. No. 43 at

26   ORDER – 9

3).) As such, the circumstances of the alleged harassment and the question whether Defendant's response was adequate with regard to these allegations is not appropriate for disposition at summary judgment. Moreover, although there is some evidence that Defendant responded to Plaintiff's complaint about being hit in the back by co-worker Jimmie Wells, Defendant's remedial action appears to have been to suspend Mr. Wells without pay for three days because he refused to cooperate with the investigation. (Ford Decl. ¶ 8 (Dkt. No. 43 at 4).) It is not clear to the Court that Defendant, as a matter of law, took adequate remedial steps to address Plaintiff's complaints about being harassed.

As for Defendant's argument that Plaintiff cannot hold Defendant liable under a vicarious liability theory for harassment by a supervisor, the Court is again unpersuaded. Defendant argues that it "exercised reasonable care to prevent and correct promptly any harassment and Plaintiff did not complain or take advantage of any preventative or corrective opportunities provided by Todd." (Def.'s Mot. 19 n.3 (Dkt. No. 41).) However, again, Defendant fails to cite any evidence to support this conclusory statement. If proven, Plaintiff's allegations about the noose in his supervisor's office and about the black stuffed gorilla hanging in a rigging loft could be bases for vicarious liability. (*See* Pl.'s Resp. (Dkt. No. 45 at 3).) Plaintiff refers to an instance in which Defendant's former president observed the hanging gorilla and told Plaintiff's supervisor (via Mr. Ford) that the gorilla had to come down. (*Id.*) Plaintiff claims that despite this admonishment, the gorilla was still hanging when he was laid off as a helper. (*Id.*) If the supervisor displayed a noose and a hanging black gorilla in spite of management's instructions to take it down, such would not indicate that Defendant took reasonable care to prevent and correct promptly any harassment. Additionally, Defendant at least in some regard appears to admit that Plaintiff's supervisor called Plaintiff a "dog:"

> it was not intended in any way as a derogatory statement. "Big Dog" is a brand name that appears on t-shirts, and colloquially refers to a man's large stature. It is generally considered complimentary (e.g., "Now you're playing with the Big Dog" used to refer to a formidable opponent). To the extent Plaintiff was offended by the comment, and communicated his concern to Mr. Fish, Mr. Fish stopped using the term immediately.

(Def.'s Answer to Pl.'s Interrog. No. 1 (Dkt. No. 46 at 49).) Plaintiff, however, alleges that Mr. Fish did

ORDER – 10

1  not stop despite repeated objections by Plaintiff (Dkt. No. 46 at 28–29), until the meeting in which Mr.

2  Fish allegedly exposed Plaintiff to the noose and hanging gorilla. (Pl.'s Resp. (Dkt. No. 45 at 3).) At least

3  for the purposes of summary judgment, the Court finds that Defendant has failed to show that as a matter

4  of law, Plaintiff cannot hold Defendant vicariously liable for the alleged harassment by Plaintiff's

5  supervisor.

6      The Court bears in mind that "when a court too readily grants summary judgment, it runs the risk

7  of providing a protective shield for discriminatory behavior that our society has determined must be

8  extirpated." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Given the Ninth

9  Circuit's emphasis on "zealously guarding an employee's right to a full trial [in employment

10  discrimination cases], since discrimination claims are frequently difficult to prove without a full airing of

11  the evidence and an opportunity to evaluate the credibility of the witnesses[,]" *id.*, the Court DENIES

12  Defendant's motion for summary judgment on Plaintiff's Title VII claims.

13  **IV.   CONCLUSION**

14      For the foregoing reasons, the Court hereby DENIES IN PART Defendant's Motion for

15  Summary Judgment (Dkt. No. 41). Defendant's motion is GRANTED IN PART as to Plaintiff's § 1983

16  claims and discrete acts outside the statute of limitations period. Plaintiff is INSTRUCTED to file an

17  Amended Complaint, within ten days of this order, identifying the proper Defendant, Todd Pacific

18  Shipyards Corporation.

19      DATED this 16th day of April, 2008.

20

21                                          John C. Coughenour
                                            UNITED STATES DISTRICT COURT

22

23

24

25

26  ORDER – 11